UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GARDEN CITY BOXING CLUB, INC.

                                      **Plaintiff,**                    REPORT AND
                                                                                RECOMMENDATION
       -against-                                                CV 05-2953 (RJD) (SMG)

**JUAN CASTILLO,** Individually and as officer, director,
shareholder and/or principal of 37th Ave. Rest. Corp.
d/b/a Alberto Restaurant and **37th AVE. REST. CORP.
d/b/a ALBERTO RESTAURANT**

                                      **Defendants.**
------------------------------------------------------------------------X

GOLD, S., U.S.M.J.:

## Introduction

       Plaintiff, Garden City Boxing Club, Inc., brings this action alleging that defendants, Juan Castillo, individually and as officer, director, shareholder and/or principal of 37th Avenue Restaurant d/b/a Alberto Restaurant ("Alberto Restaurant"), and Alberto Restaurant, unlawfully intercepted and misappropriated a closed circuit television exhibition of a boxing match held on June 5, 2004 between De La Hoya and Sturm (the "event") in violation of the Federal Communications Act of 1934, codified as amended, 47 U.S.C. §§ 553 and 605. See Compl. ¶¶ 1, 12. More specifically, plaintiff alleges that defendants intercepted and received the event without paying the required fees, and displayed it to the patrons of Alberto Restaurant. Compl. ¶ 15.

       Upon plaintiff's application and in light of defendants' failure to appear or otherwise defend in this action, the Clerk of the Court entered the default of defendants on September 15, 2005, and the Honorable Raymond J. Dearie referred this case to me for report and

recommendation on the issue of damages as to the defaulting defendants.  See Docket Entry 6 and Order dated Sept. 20, 2005.  Plaintiff has submitted a memorandum of law, dated September 2, 2005 ("Pl. Mem."), the affidavit of Joseph Gagliardi, president of plaintiff Garden City Boxing Club, Inc., dated September 7, 2005 ("Gagliardi Aff."), an affidavit from an independent auditor, Sean McGrory (Gagliardi Aff., Ex. C), the affidavit of Julie Cohen Lonstein, plaintiff's counsel, dated September 2, 2005 ("Lonstein Aff."), and an Inquest Memorandum dated October 31, 2005 in support of its application for statutory damages and attorneys' fees and costs.  Defendants have not submitted any opposition to the relief sought by plaintiff.

## Facts

Plaintiff, Garden City Boxing Club, Inc., owns the distribution rights to the event which was broadcast via closed circuit television and by encrypted satellite signal on June 5, 2004.  Compl. ¶¶ 13-14; Pl. Mem. p. 2.  Plaintiff entered into agreements with various commercial establishments in New York, allowing them to exhibit the event to their patrons in exchange for a fee.  Compl. ¶ 12; Pl. Mem. p. 2.  Defendants did not contract with plaintiff to legally broadcast the event.  Pl. Mem., p. 2; Gagliardi Aff. ¶ 6.

Plaintiff hired an investigative agency, Signal Auditing, Inc., to visit various commercial establishments in the New York City area on the night of June 5, 2004 and identify any establishments unlawfully exhibiting the event.  Pl. Mem. p. 2; Gagliardi Aff. ¶ 4.  An investigator witnessed the event being displayed on a television set at Alberto Restaurant.  See Pl. Mem. p. 2; Gagliardi Aff. ¶ 7, Ex. C.  Plaintiff asserts that defendants used unauthorized decoding equipment to intercept the event without paying a fee to plaintiff.  Compl. ¶ 16.

**Discussion**

A.    <u>Liability</u>

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. See <u>Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>Montcalm Pub. Corp. v. Ryan</u>, 807 F. Supp. 975, 977 (S.D.N.Y. 1992).

The allegations of plaintiff's complaint clearly establish the elements of liability required to state claims under both 47 U.S.C. §§ 553(a)(1) and 605(a). Under section § 553(a)(1), "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Section 553(a)(1) was intended by Congress to apply specifically to "'theft of <u>services offered over a cable system</u>[.]'" <u>International Cablevision, Inc. v. Sykes</u>, 997 F.2d 998, 1008 (2d Cir. 1993) ("<u>Sykes I</u>") (emphasis in original) (<u>quoting</u> H.R. Rep. No. 934, at 83 (1984)). Thus, Section 553(a)(1) applies only to "'theft of a service from the point at which it is actually being distributed over a cable system.'" <u>Id.</u> Although they originate as satellite signals, plaintiff's transmissions are distributed via cable, and thus fall within the scope of Section 553(a)(1). Compl. ¶ 12. See <u>Sykes II</u>, 75 F.3d at 133 (noting that Section 553(a) applies to any cable transmission, regardless of its origin). The plaintiff alleges that defendants could not have obtained transmission of the event without undertaking one of the following illegal acts: use of an illegal satellite receiver, illegal interception of plaintiff's signal, or use of an illegal cable converter box or device. Compl. ¶ 16. These acts constitute violations of Section 553(a)(1). See <u>Sykes I</u>, 997 F.2d at 1003

(noting that the use of illegal converter boxes is a violation of Section 553(a)(1)). Thus, plaintiff has established defendants' liability for a violation of Section 553(a)(1).

Section 605(a) is broader than section 553(a)(1). Section 605(a) provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). Section 605(a), which by its express terms prohibits unauthorized interception of interstate wire communications, has been held applicable to thefts of cable communications, provided that the cable programming originated as a radio communication. See International Cablevision v. Sykes, 75 F.3d 123, 131 & n.5 (2d Cir. 1996) ("Sykes II"). Plaintiff alleges that its cable transmissions are in fact derived from satellite communications. See Compl. ¶ 12; Pl. Mem., p. 4; see also Kingvision Pay Per View, Ltd. v. Williams, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998) (noting that, under Section 605(a), "[t]he term 'radio' includes satellite transmissions.") (citing National Football League v. Alley, Inc., 624 F. Supp. 6, 9 (S.D. Fla. 1983)). As the cable transmissions here did originate as satellite communications, Section 605(a) applies to defendants' interception of plaintiff's signal. Therefore, plaintiff has properly pleaded a claim under Section 605(a) and defendants are thus deemed liable to plaintiff for violating this provision. See Greyhound Exhibitgroup, 973 F.2d at 158.

B.  Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. See Greyhound Exhibitgroup, 973 F.2d at 158. Rather, claims for damages generally must be established in an

evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. See id. Thus, a court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. See Fustok v. Conticommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. See FED. R. CIV. P. 55(b)(2); Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991); Fustok, 873 F.2d at 40. Plaintiff in this case seeks an award of statutory damages, attorneys' fees and costs, and seeks a permanent injunction. See Pl. Mem., pp. 5, 8-11. Defendants have not submitted any opposition to the affidavits presented by plaintiff. Accordingly, a hearing is not warranted.

Where liability has been established under Sections 553(a)(1) and 605(a) of the Communications Act, recovery under both sections is impermissible. See New Contenders, Inc. v. Diaz Seafood Corp., 96 Civ. 4701, 1997 WL 538827, at *1 (S.D.N.Y. Sept. 2, 1997). Rather, a court should award damages pursuant to Section 605 because it provides for greater recovery than Section 553. Time Warner Cable v. Taco Rapido Restaurant, 988 F. Supp. 107, 110 (E.D.N.Y. 1997); see Sykes II, 75 F.3d at 127.

A claimant who has established liability under Section 605(a) may elect between actual damages plus defendant's profits, if any, or statutory damages. See 47 U.S.C. § 605(e)(3)(C)(i)(II). Where a party elects to recover statutory damages, it may recover an award from $1,000 to $10,000 for each violation of Section 605(a). See 47 U.S.C. § 605(e)(3)(C)(i). An additional $100,000 in enhanced damages is available where the violation was willful and was committed for commercial advantage or financial gain. See 47 U.S.C. § 605(e)(3)(C)(ii);

see also American Cablevision v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 Civ. 2834, 1991 WL 58350 (E.D.N.Y. Mar. 20, 1991)).

The amount of damages to be awarded pursuant to Section 605 rests in the sound discretion of the court. See 47 U.S.C. § 605(e)(3)(C)(i)(II) (providing for an award "as the court considers just"); see also Taco Rapido Restaurant, 988 F. Supp. at 111. An award of damages pursuant to Section 605 should be based in part on the commercial gain derived from illegal cable broadcasts. One method courts use to determine commercial gain is to assess a per customer charge based upon the number of patrons in the establishment at the time of the broadcast. See, e.g, id. (awarding damages on a per patron basis); Cablevision Sys. Corp. v. 45 Midland Enters., Inc., 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same)). Plaintiff has submitted evidence that approximately 28 patrons were present during the illegal broadcast. See Gagliardi Aff., Ex. C. I recommend that plaintiff be awarded $50 per patron. See, e.g, Taco Rapido, 988 F. Supp. at 111 (awarding $50 per patron); 45 Midland Enters., 858 F. Supp. at 45 (same). Accordingly, damages should be awarded in the amount of $1,400.

Plaintiff also seeks an enhanced damages award pursuant to Section 605(e)(3)(C)(ii), asserting that defendants' acts were willful and committed for commercial gain. The Supreme Court has defined willfulness as "disregard for the governing statute and an indifference for its requirements." Transworld Airlines, Inc. v. Thurston, 469 U.S. 111, 126-27, 105 S.Ct. 613, 624 (1985) (quoted in Cablevision v. Lokshin, 980 F. Supp. 107, 114 (E.D.N.Y. 1997)). The broadcast of an event without authorization is a deliberate act, and thus establishes willfulness. See Taco Rapido, 988 F. Supp. at 111 ("In order for [defendant] to receive the closed-circuit

broadcast, it had to have engaged in some deliberate act, such as using an unauthorized decoder or altering the cable service in some way so as to receive and view the scrambled transmission."); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). See also Gagliardi Aff. ¶ 10. As plaintiff has pleaded that defendants displayed the event in a commercial establishment, the statutory damage enhancement applicable to willful violations committed for financial gain is available in this case. See 47 U.S.C. § 605(e)(3)(C)(ii).

Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages. These factors include: (i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks. Kingvision v. El Rey Del Bistec Y Caridad, Inc., No. 01 Civ. 6562, 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001).

With respect to the first factor, plaintiff has offered evidence that defendants illegally pirated one of plaintiff's programs on another occasion. See Lonstein Aff. ¶ 5 and Ex. B; see also Garden City Boxing Club v. Castillo et al, 05-CV-03897 (ARR) (E.D.N.Y.). On November 27, 2004, defendants pirated the Barrera/Morales boxing match from plaintiff. Castillo, 05-CV-03897, Docket Entry 1. Defendants failed to answer or otherwise appear and an entry of default was noted. Id., Docket Entry 9. Magistrate Judge Azrack recommended that plaintiff be awarded total damages in the amount of $15,135. Id., Docket Entry 12. The amount recommended by Judge Azrack includes a $10,000 enhanced damages award for a willful

violation with commercial gain, and was based in part on defendants' violation in this case. Id. The instant case, however, was defendants' first violation in time. Thus, the factor concerning repeated violations does not support plaintiff's request for a substantial enhancement.

The second factor also does not support a significant enhanced damages award for willful violations. Plaintiff has not offered any specific evidence concerning actual damages in this case, but plaintiff alleges that it generally has experienced a "serious erosion of [pay-per-view broadcast] sales to commercial establishments" due to piracy, costing plaintiff "millions of dollars in the last few years." Gagliardi Aff. ¶¶ 11, 16. Plaintiff argues that this Court should grant a significant enhanced statutory damages award to deter future cable piracy by these defendants. Pl. Mem. pp. 7-8.

Turning to the last three factors, the facts recited in the report of plaintiff's investigator on June 5, 2004 do not support a large statutory damage enhancement award. According to the investigator's affidavit, patronage at defendants' restaurant was small, consisting of less than 30 individuals on the night of the fight. See Gagliardi Aff., Ex. C. The establishment had only one television set of normal size. Id. Moreover, there is no evidence that defendants advertised or otherwise promoted the fight. Lastly, plaintiff's investigator reported that he did not pay any cover charge to enter Alberto Restaurant. Gagliardi Aff., Ex. C. In sum, plaintiff has failed to establish that the defendants profited substantially or derived significant revenue by showing the event.

For these reasons, I respectfully recommend an award of $10,000 for willful violation of the statute. This amount, together with the $1,400 in statutory damages, is sufficient to both redress the harm caused by defendants' activities, as well as to deter future violations,

particularly where, as here, the defendants' restaurant is small and there is no indication that it is particularly profitable.

C.     Attorney's Fees and Costs

Plaintiff also seeks to recover its attorney's fees and costs. An award of fees and costs is mandatory pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). In this Circuit, all claims for attorney's fees must be supported by contemporaneous time records that show, "for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). Plaintiff seeks to recover $1475 in attorney's fees for 6.25 hours of attorney work and 3.0 hours of paralegal work. This amount appears reasonable, and it is supported by contemporaneous time records. Lonstein Aff., ¶ 4. Finally, plaintiff seeks to recover costs in the amount of $900, including $250 for filing fees, $300 for the cost of service of process and $350 for investigation costs. See Lonstein Aff., ¶ 3. This amount appears reasonable and is substantiated by documentary evidence. Gagliardi Aff., Ex. D; Lonstein Aff., Ex. A. Accordingly, I respectfully recommend that plaintiff be awarded $1475 in attorney's fees and $900 for costs incurred in connection with this litigation.

D.     Permanent Injunction

Plaintiff also requests a permanent injunction pursuant to 605(e)(3)(B)(I) enjoining defendants from further violating 47 U.S.C. §§ 605 or 553. Pl. Mem., p. 8. Plaintiff contends that many business establishments which pirate one event will pirate several. Id. A court "may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." Main Events/Monitor Productions v. Batista, 1998 WL

760330, at *1 (E.D.N.Y. Aug. 26, 1998). The first condition is satisfied because an injunction is an available remedy under 47 U.S.C. §§ 553(c)(2)(A) and 605(e)(3)(B)(i). As to the second factor, a party seeking a preliminary injunction must demonstrate irreparable harm and the absence of an adequate remedy at law. See Rondeau v. Monsinee Paper Corp., 422 U.S. 49, 57, 95 S.Ct. 2069, 2075 (1975).

Plaintiff's reliance on Kingvision v. Batista, 2005 WL 2999427 (E.D.N.Y. Oct. 6, 2005), to support its request for a permanent injunction is misplaced. In Batista, the Court granted the permanent injunction based *inter alia* on the fact that it was defendant's fourth violation. Id. at *4. Here, although defendants are responsible for one other violation, the violation in this case was their first instance of unlawful pirating. I therefore conclude that a permanent injunction is not warranted in this case. There is no evidence that plaintiff will suffer irreparable harm or that the monetary judgments are insufficient to deter future conduct. Particularly where, as here, the defendants' restaurant is small and there is no indication that it is particularly profitable, the damages award should be sufficient to redress the harm caused by defendants' activities, as well as to deter future violations. I therefore recommend that plaintiff's request for a permanent injunction be denied.

## **Conclusion**

For the foregoing reasons, I respectfully recommend that default judgments be entered against the defaulting defendants, jointly and severally, in the total amount of $13,775, composed of $11,400 in statutory damages and $2,375 in fees and costs. Additionally, I recommend that plaintiff's request for a permanent injunction be denied.

Any objections to the recommendations made in this Report must be filed with the Clerk

of the Court and the Chambers of the Honorable Raymond J. Dearie within ten days of receiving this Report and Recommendation and, in any event, on or before May 2, 2006. Failure to file timely objections may waive the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Plaintiff is hereby directed to serve copies of this Report and Recommendation upon defendants at their last known addresses, and to file proof of service with the Clerk of the Court.

/s/
**Steven M. Gold**
**United States Magistrate Judge**

**Brooklyn, New York**
**April 11, 2006**

U:\AJB 2006\Garden City Boxing Club v. Castillo\Garden City Boxing Club - R&R - 03.10.06.wpd